# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

STUART L. STEIN,

        Plaintiff,

v.                                       No. 15-cv-00776 WJ-KBM

THE STATE OF NEW MEXICO and
CHIEF JUSTICE BARBARA J. VIGIL,
JUSTICES PETRA JIMENEZ MAES,
JUDITH K. NAKAMURA,[1] EDWARD L.
CHAVEZ, and CHARLES W. DANIELS,
of the NEW MEXICO SUPREME COURT,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

      THIS MATTER comes before the Court upon Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, filed March 15, 2016 (**Doc. 27**); and Plaintiff's Amended Motion for Preliminary Injunction, filed December 10, 2015 (**Doc. 20**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is GRANTED.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Justice Judith Nakamura was substituted for former Justice Richard C. Bosson.

[2] In light of the Court's disposition of this motion, there was no need for Defendants to file a Reply brief. The Court initially was critical of Attorney Biernoff, counsel for Defendants, for not timely responding to Plaintiff's motion and renewed motion for preliminary injunction. *See* Doc. 23 at 3. However, the response filed by Mr. Biernoff to Plaintiff's motion and renewed motion for preliminary injunction (Doc. 26) and Mr. Biernoff's motion to dismiss Plaintiff's claims, which the Court addresses here, are of superb quality. These pleadings are clear, cogent and concise and because they direct the Court to the salient issues and arguments raised by Plaintiff, no reply was deemed necessary. Mr. Biernoff has provided outstanding legal representation for the five Justices of the New Mexico Supreme Court.

**BACKGROUND**

In this lawsuit, Plaintiff Stuart Stein ("Stein" or "Plaintiff"), proceeding *pro se*, seeks a declaration that certain statutory provisions and a Supreme Court rule requiring the sealing of state guardianship and conservatorship files  be altered so that they are open to  public inspection and not considered confidential records as required under current state law.  Stein asserts that he has a right to such relief under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

**I.     Relevant Statutes and Rules Challenged by Plaintiff**

As a matter of state law and public policy, New Mexico affords public access to court records and proceedings, but also establishes specific statutory exceptions to such access.  *See, e.g.*, NMSA 1978, § 32A-5-8 (providing for confidentiality of records in adoption proceedings); NMSA 1978, § 27-7-29 (requiring confidentiality of records from adult protective placement proceedings); NMSA 1978, § 45-5-303(I) (mandating confidentiality for certain records from guardianship proceedings); and NMSA 1978, § 45-4-407(M) (mandating same protections for certain records from conservatorship proceedings).  Stein challenges the constitutionality of these latter two statutory provisions.  One of these provisions, §45-5-303(I), pertains to guardianship proceedings and provides that:

> A record of the proceedings shall be made if requested by the alleged incapacitated person or the alleged incapacitated person's attorney or when ordered by the court. Records, reports and evidence submitted to the court or recorded by the court shall be confidential, except that the public shall be granted access to the following information:
>
> > (1) docket entries;
> > (2) date of the proceeding, appointment and termination;
> > (3) duration of the guardianship; and
> > (4) the name and other information necessary to identify the alleged incapacitated person.

Section 45-5-407(M), the other challenged statutory provision, applies to conservatorship proceedings and includes similar limitations:

A record of the proceedings shall be made if requested by the person to be protected, his attorney or when ordered by the court. Records, reports and evidence submitted to the court or recorded by the court shall be confidential, except that the public shall be granted access to the following information:

(1) docket entries:
(2) date of the proceeding, appointment and termination;
(3) duration of the conservatorship and whether limited or unlimited;
(4) for a limited conservatorship, the nature of the limitation; and
(5) the name and other information necessary to identify the alleged incapacitated person.

Both §45-5-303(I) and §45-5-407(M) are part of the Uniform Probate Code ("UPC"), which New Mexico has adopted.[3]  As Defendants observe, the statutory protections for guardianship and conservatorship proceedings that Stein challenges here are not unique to New Mexico.  At least eighteen states, including New Mexico, have adopted the UPC.  *See* Doc. 26 at 11-12 (Defts' Resp. to Pltff's Mot. For  Prel. Inj., citing statutory references).  States that have not adopted the UPC have accomplished the same objective by enacting statutes which provide for the confidential treatment of guardianship and conservatorship case files.[4]

Consistent with state law and policy, the New Mexico Supreme Court has embraced a presumption of public access to court records. Specifically, "[c]ourt records are subject to public access unless sealed by order of the court or otherwise protected from disclosure . . . ."  Rule 1-

---

[3]  The UPC "distinguishes between a guardian, who is appointed to care for the incompetent person, and the conservator, who is appointed to manage the property of one who is unable to manage their assets."  *Lucero v. Lucero*, 118 N.M. 636 (N.M. Ct. App. 1994*), superseded by statute on other grounds* as recognized in *Garcia v. Taylor*, 126 N.M. 16 (N.M. Ct. App. 1998).

[4]  See Doc. 26 (Defts' Resp. to Pltff's Am. Mot. For Prelim. Inj.) at 12 (citing KY. REV. STAT. ANN. § 387.770(1) (Kentucky statute providing that except for orders of appointment, modification and termination, "[a]ll other court records" in guardianship and conservatorship proceedings "shall be confidential and shall not be open to the general public" except on written motion by an interested party); OKLA. STAT. ANN. tit. 30, §§ 1-111(A)(2) and 1-122(A) (Oklahoma statute defining medical records, evaluations, guardianship plans and reports as "confidential information" which "shall not constitute a public record and shall be sealed by the court," and to which access "shall be strictly controlled").

079(A) NMRA. At the same time, Rule 1-079(C) does except from public access a limited number of categories of proceedings. The two categories at issue here are (1) "proceedings commenced for the appointment of a person to serve as guardian for an alleged incapacitated person," which is addressed in Rule 1-079(C)(7); and (2) "proceedings commenced for the appointment of a conservator," which is addressed in Rule 1-079(C)(8). The limitations on public access set forth in Rule 1-079(C)(7) and (8), however, are expressly subject to the disclosure requirements of §45-5-303(I) NMSA (for appointment of guardian) and §45-5-407(M) NMSA (appointment of conservator), respectively, which the Court has described above. In addition to enumerating certain categories of cases which are presumptively confidential, Rule 1-079 also provides a mechanism by which any person may move to unseal any court record, as well as criteria for courts to consider in determining whether to grant motions to unseal. *See* Rule 1-079(I)(1) & (2).

Stein claims that the restrictions on public access pertaining to guardianship and conservatorship files and proceedings contained in NMSA §§45-5-303(I), 45-5-407(M) violate his First and Fourteenth Amendment rights. Compl., ¶20. He also attacks two provisions in Rule 1-079, Rule 1-079(A) and (J). Rule 1-079(A) provides that:

> [n]o person or entity shall knowingly file a court record that discloses material obtained from another court record that is sealed, conditionally under seal, or subject to a pending motion to seal under the provisions of this rule.

Rule 1-079(J) states that:

> [a]ny person or entity who knowingly discloses any material obtained from a court record sealed or lodged pursuant to [the Rule] may be held in contempt of court or subject to other sanctions as the court deems appropriate.

Stein appears to challenge Rule 1-079(A) under the Fourteenth Amendment's Equal Protection Clause, Compl., ¶29 and challenges Rule 1-079(J) as violations of his First and

Fourteenth Amendment rights with arguments that are similar to his arguments concerning the New Mexico statutes at issue here, NMSA §§45-5-303(I) and 45-4-407(M). Compl., ¶20.  Stein states that his purpose in bringing this lawsuit is "to show the abuse suffered by wards and their families under the current system and to seek changes to assure fairness for himself and his family should he be subject to a guardianship or conservatorship in the future." Compl., ¶7.  He states that he has "seen activities in court on [guardianship and conservatorship matters][5] where judges, attorneys, appointed guardians and conservators have acted against the best interests of the ward and his/her family and for their own best pecuniary or other interests and to cover up their own wrongful actions." Compl., ¶6.

## II.    Legal Standards

Defendants seek dismissal on several grounds: (1) that this Court lacks subject matter jurisdiction over Plaintiff's claims because a case or controversy does not exist; (2) that Plaintiff lacks standing to bring this lawsuit; and (3) that Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6) and Rule 12(b).

### A.    Subject Matter Jurisdiction—Article III Case or Controversy

Federal courts are courts of limited jurisdiction.  *Kennedy v. Lubar*, 274 F.3d 1293, 1301–02 (10th Cir. 2001).  Because the jurisdiction of federal courts is limited, "there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Jurisdiction is a threshold question that a federal court must address before reaching the merits, "even if the merits question is more

---

[5] Guardianship and Conservatorship cases pending in New Mexico State District Courts have the initials "PQ" in the case numbers and the records in these sealed case files are commonly referred to as "PQ files".

easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998).  Dismissal is mandatory once the Court determines that it lacks subject matter jurisdiction over particular claims. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").

The absence of a justiciable case or controversy deprives a district court of subject matter jurisdiction.  *See Golfland Entm't Ctrs., Inc. v. Peak Inv., Inc*., 119 F.3d 852, 856 (10th Cir. 1997) (no federal subject matter jurisdiction exists in absence of a live case or controversy); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995) (question of ripeness bears on court's subject matter jurisdiction under the case or controversy clause of Article III).  The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1).

The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Where, as here, the challenge to subject matter jurisdiction is facial, "a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion," and the court must consider the complaint's well-pleaded factual allegations to be true.  *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (citing *Ruiz*, 299 F.3d at 1180).

6

B.      Failure to State a Claim

Defendants also move for dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) and Rule 12(c). A motion is treated as a Rule 12(c) motion when a motion is made after an answer is filed, which occurred in this case. *See Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 n.2 (10th Cir. 2002) ("If the defendant makes [a Rule 12(b)(6)] motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings"). Rule 12(c) motions are subject to the same standard of review as Rule 12(b)(6) motions. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, Stein's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to successfully withstand a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570)).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id*. (citing *Twombly*, 550 U.S. at 556); *see also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could

prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

## I.    RIPENESS

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1; V*alley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 471 (1982). The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1). The ripeness doctrine aims to prevent courts "from entangling themselves in abstract disagreements" by avoiding a premature ruling on the merits. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), overruled on other grounds by *California v. Sanders*, 430 U.S. 99, 105 (1977)). "Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as

well as prudential reasons for refusing to exercise jurisdiction." *Id*. The same burdens of pleading set out in *Iqbal* and *Twombly* apply to a determination of whether Stein's complaint meets the jurisdictional elements required to establish an Article III case or controversy. *See, e.g., Brown v. Herbert*, 850 F. Supp. 2d 1240, 1244-45 (D. Utah 2012) (Applying *Iqbal*'s plausibility requirement to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

As Stein notes in his response, the customary ripeness inquiry is relaxed in circumstances where there is a facial challenge implicating the First Amendment, and in such instances, a court considers the chilling effect the challenged law may have on First Amendment liberties. *See New Mexicans for Bill Richardson*, 64 F.3d at 1499. However, the mere fact that Stein mounts a First Amendment challenge to the statutes and Supreme Court rule at issue does not change Stein's burden because merely alleging the chilling even of First Amendment rights of free speech or expression does not automatically create a justiciable case or controversy without a "specific present objective harm or a threat of specific future harm." *Nat'l Conf. of Catholic Bishops v. Bell*, 490 F. Supp. 734, 741 (D.D.C. 1980) (citing *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (mere existence of statute or regulation that plaintiff believes should apply to and be enforced against him does not ordinarily create a justiciable case or controversy).  In other words, Stein is still required to plead a ripe and justiciable case or controversy.  In the complaint, Stein presents various allegations, such as:

- He "wishes to discuss with the press and other citizens" wrongdoing that he claims to have observed in guardianship and conservatorship proceedings" (Compl., ¶7);

- In wishing to discusses those matters, it is impossible *not to* disclose material he possesses obtained from a sealed guardianship or conservatorship court records (Compl., ¶13);

- In discussing these alleged violations of law and procedure, Stein would "put himself in jeopardy of being held in contempt" (Compl., ¶ 15);

- Having no access to guardianship and conservatorship files and the ability to discuss them with the press and public "violates his free speech rights under the First Amendment and "favors those who do not want to disturb the status quo" (Compl., ¶20), and for this reason, all guardianship and conservatorship files should be laid bare to the public; and

- New Mexico's presumptive sealing of certain records from guardianship and conservatorship proceedings violates the Equal Protection Clause of the Fourteenth Amendment (Compl., ¶29).

These allegations do a fine job of setting out what Stein would like to do, but none form the basis for a legally cognizable dispute. Missing from the complaint are allegations that Stein has been held or threatened to be held in contempt for revealing information from sealed court files, or for discussing his viewpoints about alleged abuse in guardianship and conservatorship proceedings. Stein does not assert that he has tried but failed to use the procedures set forth in Rule 1-079 by which any person may move the New Mexico State District Court Judge presiding over a guardianship or conservatorship case to unseal some or all of the records in that matter. As a result, Stein clearly objects to provisions in New Mexico statutes and Supreme Court Rule maintaining the confidential nature of PQ files, but he fails to set forth essential elements of a cognizable claim giving rise to an actual case or controversy.

Stein also feels that he has previously been sanctioned—and thus has standing to bring this lawsuit—by virtue of a denial of his motion in a previous case to open a guardianship hearing to the public. Doc. 30 (Response) at 16. He explains that the Hon. Linda M. Vanzi, formerly a New Mexico State District Judge and now a New Mexico Court of Appeals Judge, denied his motion to open the hearing over his "strong objection" and complaints about past

actions of the appointed guardian and the ex parte procedure that led to that appointment.[6] Stein's allegations in this case take root largely from this unfavorable ruling, where he now asserts that his constitutional rights were violated and seeks wholesale public disclosure of information which is otherwise kept sealed under state statutes and Supreme Court rules.

As counsel for Defendants note, Stein's misconduct as legal counsel in a New Mexico state court case involving guardianship and conservatorship matters ultimately led to Stein's disbarment from the practice of law by the New Mexico Supreme Court.  The Court is mindful of the fact that Stein has strenuously objected to the Court's previous mention of his status as a "disbarred attorney," but whether Stein appreciates it or not, the reasons behind his disbarment are relevant to Stein's purported objectives in filing this lawsuit and to the relief he now seeks. The New Mexico Supreme Court disbarred Mr. Stein in 2008, finding that he had "violated the conflict of interest and misrepresentation provisions of the Rules of Professional Conduct" and victimized a vulnerable individual in a guardianship/conservatorship proceeding.  *In the Matter of Stein*, 143 N.M. 462 (2008) ("In reviewing the hearing committee's disciplinary recommendations, the hearing panel found further aggravating factors of dishonest or selfish motive and vulnerability of the victim. The panel concluded that no mitigating factors existed."). Thus, as counsel for Defendants notes, while Stein now "wishes to discuss with the press and other citizens the wrongs personally witnessed in the guardianship and conservatorship system," Compl., ¶6, that desire apparently does not extend to the wrongs he himself inflicted in that system.

---

[6] Stein had filed a motion under NMSA §45-5-303(K), which provides that such hearings remain closed unless the alleged incapacitated person requests otherwise, but the motion was denied. Compl., ¶ 15. Stein claims that the judge had no "legal reason or claim of statutory power to close the hearing"—notwithstanding the precise language in §45-5-303(K) which says otherwise.

Stein's eventual disbarment, however, has no bearing on the issues in this lawsuit because Stein was not disbarred for his request to open the hearing, but for his misconduct in representing his client.  Thus, to the extent this lawsuit is a masked attempt to reopen the grounds for his disbarment, Stein has no legal basis for doing so.

## II.    STANDING

The case or controversy limitation requires that a plaintiff have standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992) ("*Defenders of Wildlife")*; *Allen v. Wright*, 468 U.S. 737, 751 (1984) (the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III).  The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing which embodies judicially self-imposed limits on the exercise of federal jurisdiction.  *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quotations omitted).  To have Article III standing, a plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress.  *Id.* The prudential standing doctrine encompasses various limitations, including "the general prohibition on a litigant's raising another person's legal rights." *Id.* (citing *Allen,* 468 U.S. at 751).  A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Another requirement for prudential standing is that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

A plaintiff has standing when (1) he has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury

will be redressed by a favorable decision.  *Defenders of Wildlife*, 504 U.S. at 559–61.  An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical.  *Id.* These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.*  Under the *Twombly/Iqbal* standard, a plaintiff's claims for standing "do not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, at 555.  In deciding the issue of standing, the Court must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff.  *Warth*, 422 U.S. 490, 501 (1975).

A.   First Amendment Claims

The Supreme Court has acknowledged that the "mere threat of prosecution under the allegedly unlawful statute" may have a "chilling" effect on an individual's protected activity, and that the "concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." *Ward v. Utah,* 321 F.3d at 1266-67.  Even so, a plaintiff "bringing a facial challenge to a statute on First Amendment grounds, however, must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement." *Ward v. Utah*, 321 F.3d at 1267 (10th Cir. 2003);[7] *Bischoff v. Osceola County, Fla*., 222 F.3d 874, 884 (11th Cir. 2000) ("[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some injury-in-fact as a result of defendant's actions.").  Stein has not met this requirement.

---

[7]  In his response, Stein includes the portion of *Ward* referring to society's interest in having the statute challenged, but omits *Ward's* holding that a plaintiff bringing such a challenge must also establish an injury-in-fact.  Doc. 30 at 20.

A plaintiff generally has standing "only if he or she has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (plaintiffs were without standing to challenge statutes as applied where none of the statues had been applied against the plaintiffs).   Stein argues that he has a constitutional right to obtain unfettered access to sequestered PQ files, but he does not claim that he has been threatened with prosecution or that such a prosecution is likely.  He therefore has no standing to assert these rights and fails to allege a "dispute susceptible to resolution by a federal court." *Natl'l Council for Improved Health v. Shalala*, 122 F.3d 878, 884 (10th Cir. 1997); *see also Republican Party of Minn., Third Congressional Dist. v. Klobuchar*, 381 F.3d 785, 792–93 (8th Cir. 2004) (mere allegation of possibility of prosecution insufficient; standing requires imminent threat of prosecution); *McCollester v. City of Keene*, 668 F.2d 617, 620–21 (1st Cir. 1982) (finding no standing where the plaintiffs did not alleged anything more than a speculative risk of prosecution).  Stein's concern that he would "put himself in jeopardy of being held in contempt" if he discussed alleged abuses in the guardianship and conservatorship system is mere speculation and is insufficient to confer standing.  *See Meese v. Keene*, 481 U.S. 465, 473 (1987) (mere allegation that a plaintiff suffered a deprivation of a constitutional right does not confer standing without proof of injury as a result of the deprivation).  Therefore, Stein has no standing to bring a First Amendment claim.

> B.     Equal Protection Claims

Stein also lacks standing to bring a claim under the Equal Protection clause. He seeks a judicial declaration that NMSA §45-4-303(I), §45-5-407(M), and NMRA 1-079 are unconstitutional on Equal Protection grounds. "The equal protection clause is triggered when the

government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth*., 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985)).  When a plaintiff is not a member of a protected class and does not assert a fundamental right, that plaintiff must show that he was treated differently than others similarly situated and that this different treatment lacked a rational basis.  *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998); *Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994), *cert. denied*, 513 U.S. 1002 (1994).

Stein asserts that New Mexico creates "two classes" of individuals: (1) those who bring actions against court-appointed Guardians/Conservators, and these civil cases are sealed from public inspection; and (2) and those who bring actions against Trusts/Agents named in a Power of Attorney, a Health Care Directive or a Revocable Living Trust, and these civil cases are open to the public.  Compl., ¶28.  Stein claims that there is "no reason for the difference in treatment of the court files" because of the "same need for care" due to incapacity.  ¶ 29.  In this lawsuit, Stein is not suing court-appointed Guardians/Conservators *or* Trusts/Agents.  Because he does not allege that he belongs to either of these groups, he lacks standing to pursue an equal protection claim for alleged discrimination against individuals in either of these groups.  *See McGowan v. State of Maryland*, 366 U.S. 420, 429 (1961) ("Since the general rule is that a litigant may only assert his own constitutional rights or immunities . . . we hold that appellants have no standing").

Nor does Stein come within any of the categories for which a litigant may bring actions on behalf of third parties, which includes: (1) a litigant who suffer an injury-in-fact, giving that litigant a sufficiently concrete interest in the outcome of the issue; (2) a litigant who has a close relation to the third party; and (3) where there exists some hindrance to the third party's ability to

protect his own interests. *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (Third party standing is appropriate only when the "party asserting the right has a 'close' relationship with the person who possesses the right and there is a 'hindrance' to the possessor's ability to protect his own interests") (quoting *Powers*, 499 U.S. at 411).   Accordingly, Stein has no standing to pursue the Equal Protection claims in the complaint.

III.    Failure to State a Claim Under Rule 12(b)(6)

Even assuming this Court had jurisdiction over Stein's claims, Defendants contend that Stein fails to state a claim upon which relief can be granted under either First Amendment or Equal Protection theories.

A.    First Amendment Claims

Stein contends that the First Amendment affords him a right to inspect and copy public records and documents including judicial records and documents, citing to *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).   However, Stein neglects to include other language from *Nixon* in which the United States Supreme Court noted that access to court records is not absolute and may be restricted.   435 U.S. at 598-599 ("[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute" and that "the decision as to access is one best left to the sound discretion of the trial court").   Thus, the only question is whether the restrictions from public disclosure set forth in NMSA §§45-5-303(I), 45-4-407(M) and Rule 1-079(A) are unconstitutional.

1.    *First Amendment Protection*, *Generally*

As an initial matter, and as Defendants note, while the public has a presumptive right under the First Amendment to attend criminal trials, neither the United States Supreme Court nor

16

the United States Court of Appeals for the Tenth Circuit has ever recognized a general right of access to court records from civil cases. *Richmond Newspapers, Inc., v. Virginia*, 448 U.S. 555 (1980). Documents and records filed in criminal proceedings also come under this category. *Id.* at 580, n. 17. The presumption described in *Richmond* has not been extended to all civil proceedings. *See Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596, 610 (1982) (O'Connor, J., concurring) ("I interpret neither Richmond Newspapers nor the Court's decision today to carry any implications outside the context of criminal trials."); *see also Riker v. Fed. Bureau of Prisons*, 315 Fed. App'x. 752, 756 (10th Cir. 2009) ("The Supreme Court has not yet ruled that there is a constitutional right to access court documents" in civil cases). In fact, courts have refused to create a First Amendment right to unlimited access to records from civil proceedings in other contexts, such as sealed qui tam complaints, *see ACLU v. Holder*, 652 F. Supp. 2d 654, 662 (E.D. Va. 2009*)*; and grand jury proceedings, *see In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2006).

The cases on which Stein relies do not sway the Court because none of those cases provide for absolute First Amendment protection. For example, in *Lugosch v. Pyramid Company of Onnandaga*, 435 F.3d 110, 124 (2nd Cir. 2015), the Second Circuit referred to a "presumption of immediate public access" but did not hold that all civil proceedings are open to the public. 435 F.3d at 126. In fact, the Second Circuit actually recognized that there were "exceptional circumstances" that warranted certain proceedings, including summary judgment proceedings, to be barred from public scrutiny. *Id.* at 124. Stein cites to no case which holds that all civil proceedings are public, without exception.

Additionally, the First Amendment does not guarantee unfettered access to government records. *See Lanphere & Urbaniak v. Colo.*, 21 F.3d 1508, 1511 (10th Cir. 1994) (framing

plaintiff's lawsuit seeking disclosure of criminal justice records as an "access-to-records" case and finding that "the First Amendment is not implicated"); *see also Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001) ("It is well-settled that there is no general First Amendment right of access to all sources of information within governmental control.") (citations omitted).   The Tenth Circuit and federal district courts within this circuit have not issued published opinions on the constitutionality of statutes providing for the sealing of certain records from specific categories of cases, but courts in other jurisdictions have rejected such challenges, finding that there is no constitutional right to access those records.  For example, in a case factually similar to the instant case, the Pennsylvania Supreme Court affirmed the district court's rejection of a First Amendment challenge to the sealing of incapacity and guardianship records. *See In Re Estate of dePont*, 2 A.3d 516, 517 (Pa. 2010).  That court held that courts maintain "supervisory powers to control access to their own records" and that  the burden properly fell on a non-litigant to show that records from guardianship proceedings should be unsealed, not on an incapacitated person or his representatives to show the need for continuing confidentiality.  *Id.* at 525.

Courts have also upheld statutes protecting confidentiality of records in contexts other than guardianship or conservatorship.  *See ACLU v. Holder*, 652 F. Supp. 2d 654, 663 (E.D. Va. 2009) ("[W]here secrecy is prescribed by statute—such as grand jury proceedings—there is no historical tradition of access to sealed records.").  The First Amendment "does not guarantee a constitutional right of special access to information not available to the public generally." *In re Roger B*., 418 N.E.2d 751, 757 (Ill. 1981); *Natural Parents of J.B. v. Fla. Dep't of Children and Family Servs*., 780 So.2d 6, 11-12 (Fla. 2001) (rejecting press challenge to automatic disclosure of adoption proceedings, finding that the public policy of protecting parties' privacy in adoption proceedings outweighed the interest the public might have in gaining access to the proceedings).

Even where an individual seeking access to sealed records may have a particularized interest in those records, such as an adoptee seeking information from case records, courts have declined to identify a First Amendment right to access. *See In re Roger B.*, 418 N.E.2d at 757 (rejecting request by adoptee to declare unconstitutional an Illinois adoption statute that places case records under seal).

2.   *Regulation of Speech*

As part of his First Amendment challenge, Stein claims that NMSA §45-5-303(I), §45-5-407(M) and Rule I-079 are content-based regulations of speech.   However, Stein's allegations in the complaint do not present a viable claim under that theory.   Content-based regulation refers to "restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic."   *Consol. Edison Co. v. Pub. Sev. Comm'n*, 447 U.S. 530, 537 (1980); *cf. Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 43 n. 15 (10th Cir. 2013) ("A policy is content neutral if its restrictions do not hinge on either the viewpoint or the subject ma[tter] of the speech.").   In this case, the "viewpoint" or "subject matter" allegedly restricted is Stein's ability to express his "beliefs on the corruption of the guardianship and conservatorship operation in the New Mexico court system."   Compl., ¶7.   Neither §45-5-303(I), §45-5-407(M), or Rule 1-079 can possibly be construed as restricting Stein's ability to express himself on these matters because Stein is free to speak or write about what he perceives as malfeasance by others in guardianship and conservatorship proceedings, so long as he does not disclose specific materials from records of proceedings, reports or evidence submitted to courts, in cases which remain under seal.   In fact, in the filing of this lawsuit, Stein is exercising his First Amendment right of free speech to criticize the legislature and state supreme court, without reprisal of any kind from either the legislature, the state supreme court, or this Court. In his response, Stein

19

offers examples of court decisions involving regulation of speech, but none of these cases hold that a privacy interest is an insufficient reason to bar public access to certain court records. Instead, Stein declares that "[t]here is no basis for using general claims of privacy or embarrassment to either seal or declare a file confidential." Doc. 30 at 13. Stein is absolutely correct that simple embarrassment is generally not enough of a reason to trump a First Amendment right to public access of court proceedings or records. *See Foltz v. State Farm Mut. Automobile Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (a litigant "who might be embarrassed, incriminated or exposed to litigation through dissemination of materials is not, without more, entitled to the court's protection"). However, what is at stake here is not mere embarrassment but rather, significant privacy interests and confidential matters; and courts have upheld the sealing of court proceedings and filings where such interests are at stake. *See, e.g.*, *Baumann v. Dist. of Columbia*, 795 F.3d 209, 218-19 (D.D.C. 2015) (finding that sanctions for disclosure of confidential emergency response recordings did not violate plaintiff's First Amendment rights); *U.S. v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977) (holding that the trial court properly refused public or media inspection of documents which were not matters of public record, such as jurors' names and addresses); *Am. Motors Corp. v. Huffstutler*, 575 N.E.2d 116, 119–20 (Ohio 1991) (finding that disclosure of confidential or privileged information is not protected under the First Amendment); *In re Ft. Totten Metrorail Cases*, 960 F. Supp. 2d at 11 (determining that where protected parties "have a strong privacy interest in keeping . . . highly personal information sealed," sealing is permissible under the First Amendment, even if that right applies to civil case proceedings). (citing *U.S. v. Brice,* 649 F.3d 793, 796-98 (D.C. Cir. 2011)).

Stein argues that the sealing of PQ files is a government regulation of speech that cannot survive strict scrutiny, Doc. 30 at 22, but never actually explains why it does not pass that test.

Stein seems to argue that setting apart certain identifiable files (such as the PQ files concerning guardianship and conservatorship proceedings) from public view is a content-based regulation and that in itself ends the analysis.  Doc. 30 at 22.  It does not.

An analysis to determine whether there is a justification for a restriction on speech requires courts to first determine whether the regulation was content-based or content-neutral, which in turn establishes whether a strict scrutiny or intermediate standard of review applies. Content-neutral restrictions are subject to a lesser degree of scrutiny than content-based restrictions.  *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203–04 (10th Cir. 2002) (citing *Mesa v. White*, 197 F.3d 1041, 1045 (10th Cir. 1999) and *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).  Content-neutral time, place and manner restrictions are permissible if they are narrowly drawn to achieve a "significant" governmental interest and if they allow communication through other channels; but content-based exclusions must be narrowly tailored to effectuate a compelling (rather than "significant" governmental interest).   *Mesa v. White*, 197 F.3d at 1045 (citing *Turner Broadcasting Sys. Inc v. FCC,* 512 U.S. 622, 641-42 (1994) (explaining reasons for different levels of heightened scrutiny)); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (government regulation of expressive activity is content neutral so long as it is "*justified* without reference to the content of the regulated speech") (emphasis in original).  Also, regulation of speech in a public forum is subject to a heightened scrutiny where regulation of speech in a nonpublic forum is subject to a lower reasonableness test.  *PeTA v. Rasmussen*, 298 F.3d at 1204; *Summum v. Callaghan*, 130 F.3d 906, 914 (10th Cir. 2007) (finding that the lawn of a county courthouse was transformed into a "limited public forum" by installation of private fraternal organization of monolith that espoused organization's views and was subject to reasonableness

standard for speech restrictions);  *Perry*, 460 U.S. at 45-46 (describing distinct categories of government property).

Stein concludes that the sealing of certain parts of PQ files is content-based regulation because the restriction targets certain content in the files.  Doc. 30 at 4.[8]   However, even assuming that the restrictions on public access in NMSA §§45-5-303(I), 45-4-407(M), and Rule 1-079(A) are content-based and therefore subject to strict scrutiny (and the Court assumes this here in order to achieve a simple and direct resolution to this issue), they are justified restrictions under the First Amendment.  Limiting public access to the PQ files must serve a compelling state interest "that is narrowly drawn to achieve that end." *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114, 1131–32 (10th Cir. 2002) (citing *Perry*, 460 U.S. at 45); *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1280 (10th Cir. 1996) (at a minimum, to survive strict scrutiny the City's policy must be "narrowly drawn to effectuate a compelling state interest").  The state statutes and Supreme Court rule do not totally preclude the public from information in the PQ files.  Sections 45-5-303(I) and 45-407(M) list specific information to which the public has access, and other information is considered "confidential."   Given the highly sensitive and personal nature of those types of records, the Court easily finds that the restrictions on public access are limited and narrowly tailored to protect the privacy interests of the individuals involved in those proceedings and that these privacy interests outweigh any interest the public might have in gaining access to that information.  Stein has not suggested any

---

[8]  The Court assumes that Stein's content-based challenge is limited to the restriction on sealed records and does not extend to the sealing of guardianship and conservatorship proceedings in a courtroom.  Such an argument would be easily rejected because a courthouse is not a public forum and is therefore a place where free speech may be restricted."  *See Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir 1997) (finding that a courthouse is a nonpublic forum); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir 1998) (holding that the lobby of a courthouse is not a traditional public forum or a designated forum, "not a place open to the public for presentation of views"); *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir 2005) (citing *Berner*); *Huminski v. Corsones*, 396 F.3d 53, 90 (2nd Cir 2005) (finding that a courthouse and courthouse parking lot adjacent to courthouse were not public fora).  Thus, any First Amendment challenge to the sealing of courthouse proceedings involving guardianship and conservatorship matters would be short-lived, since it would be subject only to a reasonableness standard.

reason to convince the Court that it should override these privacy considerations. Moreover, a procedure exists whereby an individual may move to unseal such sequestered material. *See* Rule 1-079(I)(1) & (2).

Stein also makes much of a recent decision by the United States Supreme Court, *Reed v. Town of Gilbert, Arizona*, in which the Supreme Court clarified what is meant by a "content-based" regulation. 576 U.S. ---, 135 S. Ct. 2218 (2015); see Doc. 30 at 2 & 24. The *Reed* decision applied a "commonsense" meaning of the phrase "content-based" and found no distinction between "content-based" restrictions and "subject-matter" restrictions, so that both categories would be subject to strict scrutiny. *Id.* at 2227. However, *Reed* does not change the analysis here because the state statutes and rule at issue survive a strict scrutiny test.

### 3.   *Journalistic Restraints*

Stein presses on in his First Amendment challenge, pointing to "journalistic exposés" that are being written in other areas of the country concerning abuses in the guardianship and conservatorship system. He insists that New Mexico's limitations on public access to PQ files are to blame for the lack of such articles being written about abuses taking place here. Stein contends that the press in New Mexico should have the ability to gather a story and confirm facts about such abuses but the press cannot do so because of the state statutes and Supreme Court rule limiting public access to PQ files and court proceedings. Stein provides examples of exposés being written elsewhere, such as an article on violations of the Americans with Disabilities Act by court-appointed attorneys in the Los Angeles Times because of a lack of training, or another from the New York Times on guardianship abuses which mentions the case of a court-appointed lawyer taking his ward out for a walk and buying her an ice cream for which he charged $1,275.00. Doc. 30 at 14. The Court is rather skeptical of Stein's contention that uncovering

alleged abuses in the system cannot occur without public access to all of the material in guardianship and conservatorship files.  Fortunately, there is no need to confirm Stein's theory, since the only relevant question here is whether the sealing of certain material under NMSA §§45-5-303(I), 45-4-407(M), and Rule 1-079(A) is unconstitutional under the First Amendment or Equal Protection.

Stein states that his "quick, informal check" of the law shows that in Arizona, Alabama, California and Connecticut, guardianship and conservatorships are automatically open, except for protection of personal identifier information, and that sealing requires a motion, hearing and order.  The Court's own quick review of the law indicates that generally, the default in other states is that the public has access to these files unless they are sealed by court order or otherwise considered confidential.[9]  Like other jurisdictions, New Mexico also mandates a presumption of public access.  *See* Rule 1-079(A) ("Court records are subject to public access unless sealed by order of the court or otherwise protected from disclosure under the provisions of this rule.").  New Mexico does appear to differ from other states in that it has carved out certain matters which are sealed from public view unless a request is made to open them.  However, this difference does not mandate a finding that the New Mexico state statutes and Supreme Court rule are unconstitutional under the First Amendment, because (1) court records are generally available for public access and inspection; (2) the reason for sealing certain parts of PQ files serves a compelling government interest in protecting confidential and private information of individuals involved in the process; (3) only portions of material in PQ files are sealed, thus

---

[9] *See, e.g.*, Rule 2.503 ("Public Access"), 2016 Calif. Rules of Court, providing that the court's electronic records "must be made reasonably available to the public in some form "except those that are sealed by court order or made confidential by law"; in Arizona, 17A A.R.S. Sup. Ct. Rules, Rule 123(c) (1), Az. Rev. Statutes Ann. (Public Access to the Judicial Records of the State) provides for an open records policy where court records are "presumed to be open to any member of the public for inspection" except that "where there are countervailing interests of confidentiality, privacy or bests interests of the state public access to some court records may be restricted; and in New York, 22 NYCRR§216.1 (sealing of court records for good cause).

narrowly tailoring the restrictions to serve that governmental purpose; and (4) while the public has no right to this sealed information, the public has recourse to unseal this information by motion to the court where the sealed case is pending.

Therefore, Stein fails to assert a claim under the First Amendment for which he is entitled to any relief from this Court even if he had standing to assert this claim.

B.     Equal Protection Claims

The Court again assumes, for argument's sake, that Stein has standing to bring an equal protection claim in order to put this claim to rest as well.  Stein does not allege he has either a fundamental right or that he is a member of a protected class, either of which is necessary to allege a viable Equal Protection claim.   Suspect classes include "discrete and insular minorit[ies]" based on nationality, race or alienage. *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1180 n. 9 (D. Colo. 2013) (citing *Graham v. Richardson*, 403 U.S. 365, 271 (1971); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002), *cert. denied*, 537 U.S. 814 (2002)).  Stein does not claim to be member of such a class and fails to articulate how or why the unknown "interested persons" he seeks to advocate for constitute a suspect class.

Nor does Stein enumerate which fundamental right is implicated.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (describing fundamental rights as the right to free speech, the right to religious freedom, the right to vote, or the right to interstate travel); *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm.*, 889 F.2d 929, 932 (10th Cir. 1989) (recognizing as fundamental rights, the right to procreate, the right to interstate travel, the right to associate to advance political beliefs, and the right to vote).

The Court does not read the complaint to allege a "class of one" claim, but such a claim would not be plausible based on the allegations in the complaint.   The Supreme Court has

"recognized successful equal protection claims brought by a 'class of one," where the plaintiff alleges that [he] has been intentionally treated differently from others  similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam); *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1149 (10th Cir. 2001).  Stein would have to allege that he was treated differently than others similarly situated without a rational basis for doing so.  *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) (holding that when plaintiff is not a member of a protected class and does not assert a fundamental right, that plaintiff must show that he was treated differently than others similarly situated and that this different treatment lacked a rational basis).  Stein fails to allege what this treatment consists of, that he was treated differently from others similarly situated, or that the difference in treatment was intentional.   The proceedings and records sealed pursuant to NMSA §45-5-303(I), §45-5-407(M), and Rule I-079 are directed toward every individual, and not just Stein as a "class of one."   As mentioned previously, Stein does not purport to be bringing an action against court-appointed Guardians/Conservators (these files are sealed from public inspection), and so he cannot claim to be treated differently from Trusts/Agents named in a Power of Attorney, Health Care Directive or Revocable Living Trust (these civil cases are open to the public).

Furthermore, under a rational basis review, which is all that is required, the particular governmental interest at stake (here, protection of confidential or private matters by sealing certain portions of PQ files) need only have a reasonable basis in order to withstand a constitutional challenge.  *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan*., 927 F.2d 1111, 1119 (10th Cir. 1991).  Stein has the burden of showing otherwise, and this he has not come close to doing.  *U.S. v. Phelps*, 17 F.3d 1334, 1344-45 (10th Cir.), *cert. denied*, 513 U.S.

844 (1994) ("the burden is on the appellant to establish that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate governmental interest").  The government interest behind maintaining confidentiality for private and perhaps sensitive information in guardianship and conservatorship files is clearly legitimate and has a reasonable basis, particularly when §45-5-303(I) and §45-5-407(M) are narrowly tailored to allow disclosure of certain information from those files.  Accordingly, Stein's Equal Protection fails on its merits, even if Stein had standing to bring this claim.

## IV.    Plaintiff's Request to Amend

Stein asks for the opportunity to file an amended complaint to cure the Court's "objections" to his complaint.  Doc. 30 at 24.

Although Rule 15 of the Federal Rules of Civil Procedure provides that amendments should be freely granted, the rule's liberality is not boundless. A district court may refuse to allow amendment if it would be futile.  *Lind v. Aetna Health, Inc*., 466 F.3d 1195, 1199 (10th Cir. 2006) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  There is no point in allowing Plaintiff to amend the pleading.  The Court has concluded that Stein has no standing to pursue his claims, and, as the Court has discussed, these claims would not survive dismissal on the merits.  *See Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (a proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment). Given the futility of Stein trying to amend his complaint, his request is denied.

## V.    Plaintiff's Amended Motion for Preliminary Injunction (Doc. 20)

The Court's findings in this Memorandum Opinion and Order render moot Stein's Amended Motion for a Preliminary Injunction, as the Court has found that Stein has no standing to pursue this request, and even assuming Stein has standing, his claims are totally devoid of any merit.

## CONCLUSION

The Court finds and concludes that there is no subject matter jurisdiction over Stein's claims. Stein has no standing to pursue his claims because he fails to set forth essential elements of a cognizable claim giving rise to an actual case or controversy, and he has alleged no injury-in-fact.

The Court also finds and concludes that Stein's allegations do not allow a reasonable inference to be made that Defendants are liable for the misconduct alleged, under either a First Amendment or Equal Protection theory. The First Amendment does not guarantee an absolute and unrestrained right of access to court records without exception, and the restrictions to public access provided for in NMSA §§45-5-303(I), 45-4-407(M), and Rule 1-079(A) pass a strict scrutiny test and, therefore, are not unconstitutional violations of the First Amendment. Stein's Equal Protection claim also fails to meet *Iqbal/Twombly* standards because the allegations in the complaint do not plausibly infer liability on the part of Defendants. Stein does not meet even the threshold elements of an Equal Protection claim because he does not allege a violation of a fundamental right and does not allege that he belongs to a class that is protected under equal protection analysis.

The Court cannot afford Stein with any satisfactory resolution to his challenges to NMSA §§45-5-303(I), 45-4-407(M), and Rule 1-079(A) for the above-stated reasons. If Stein believes that changes to these statutory provisions and Supreme Court rule are necessary before he can

openly discuss problems in the guardianship and conservatorship system, he has other recourse: he can lobby state legislators and even seek election as a state representative or state senator.  He can also submit proposals to the appropriate New Mexico Supreme Court Rules committee to request the changes he feels are necessary or appropriate.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss for lack of Jurisdiction and for Failure to State a Claim **(Doc. 27)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiff's request to amend the complaint is DENIED as futile; and

**IT IS FINALLY ORDERED** that Plaintiff's Amended Motion for Preliminary Injunction **(Doc. 20)** is hereby DENIED AS MOOT.

A Rule 58 Judgment shall issue separately.

_____
UNITED STATES DISTRICT JUDGE